**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Metallic Resources, Inc., | ) | CASE NO: 5:24CV1909 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | |
| P. Kay Metal, Inc., | ) | |
| | ) | **(Resolves Docs. 51 and 64)** |
| Defendant. | ) | |

Pending before the Court are competing motions for summary judgment filed by Plaintiff Metallic Resources, Inc. ("MRI")(Doc. 51) and Defendant P. Kay Metal, Inc. ("PKM")(Doc. 64). Upon review, the Court DENIES both motions.

## I. FACTS

The operative facts giving rise to MRI's complaint are largely undisputed. In September 2024, PKM agreed to buy 20,025 pounds of tin in ingot form – known as Tin Pigs – from MRI at the price of $14.33 per pound. The parties agree that PKM was responsible for arranging pickup of the Tin Pigs from MRI's facility in Twinsburg, Ohio. The parties further agree that the shipping terms were FOB Twinsburg, Ohio and that PKM would pay MRI within 30 days of receipt of the Tin Pigs.

PKM used a freight broker, King of Freight, LLC, to complete its obligation to arrange for transportation of the Tin Pigs. In turn, King of Freight arranged for a carrier named Semana Legacy Trucking, LLC to physically pick up and ship the Tin Pigs. King of Freight arranged for the Tin Pigs to be picked up on September 10, 2024 at 11:00 a.m. and delivered to PKM on

September 11, 2024 at 8:00 a.m. Moreover, a bill of lading was prepared that noted that Semana Legacy could not subcontract the job, so only Semana could pick up the Tin Pigs.

On the day scheduled for pickup, a carrier arrived at MRI and indicated it was there to pick up the Tin Pigs. Tara Naragon, an MRI employee at the time, indicated that the driver of the truck confirmed that he was with Semana by signing a receipt. However, the parties appear to agree that the truck driven on to MRI's property had no markings indicating that it was associated with Semana and instead bore markings that appear to state Kamboj. MRI then loaded the truck and sent it on its way. After loading the truck, MRI provided the signed bills of lading to PKM via email. King of Freight emailed both MRI and PKM that same day to indicate that the Tin Pigs were "loaded and rolling."

Unfortunately for all involved, the Tin Pigs were never delivered to PKM and have never been located as of the date of this order. Based upon the above, MRI brought a breach of contract claim against PKM when it failed to pay for the Tin Pigs. The parties now have pending cross motions for summary judgment. Upon review, the Court finds that a genuine issue of material fact prevents judgment in favor of either party.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is “material” only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party’s case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, “the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact.” *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

The burden of production for the movant is to identify which portions of the evidence “demonstrate the absence of a genuine issue of material fact” regarding an essential element or, alternatively, to demonstrate a showing that there is “literally no evidence in the record” in support of an essential element of the other party’s initial claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 332 (1986). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

## III. LAW AND ANALYSIS

At the outset, the Court notes that there is no dispute that the parties entered into a valid and binding contract for the sale of the Tin Pigs. Moreover, there is no dispute that the parties agreed that liability for the loss of the Tin Pigs would transfer to PKM at the time the Tin Pigs were loaded at MRI's Twinsburg facility. However, the parties sharply dispute whether the Tin Pigs were loaded *consistent* with the parties' agreed upon terms and conditions.

In support of its view that it fully complied with its obligations, MRI relies upon the declaration of its former employee Naragon, certain signed documents, and the admission of third-party defendant King of Freight. The Court examines each piece of evidence that MRI claims supports its position.

Naragon's declaration indicates that she worked for MRI at the time of the shipment in question. She noted as follows:

> Before I loaded the Tin Pigs onto the truck from Semana Legacy Trucking LLC on September 10, 2024, I inquired and the driver confirmed in discussion with me that he was from Semana Legacy Trucking and was at MRI to pick up the Tin Pigs on behalf of P. Kay Metal, Inc.

Doc. 48-1 at 2. However, she also noted as follows:

> On the third page of the bill of lading documents, the driver wrote his individual name Kambos next to "Carrier Name". Kambos is not the name of the carrier/trucking company that picked up the Tin Pigs from MRI.

Doc. 48-1 at 2. As such, at best, Naragon's declaration presents conflicting information. Naragon claims that the driver verified that he worked for Semana Legacy Trucking, but when signing a form with the box marked "Carrier name", the driver wrote something resembling Kambos. Notably, the bill of lading had "Semana Legacy Trucking LLC" pre-printed on the line next to

"Carrier Company." Further, the Court would note that the line next to "Carrier Signature" has a signed named, but it does not appear to the Court to read "Kambos" in any part.[1]

Similarly, the fact that King Of Freight responded to a request for admissions indicating that Semana Legacy had picked up the Tin Pigs does not serve to eliminate the question of fact over who actually picked up the load. Not only could King of Freight's admission not bind PKM, but the admission also offers no factual basis. At no point in this litigation has any party identified the individual that actually drove the truck that was loaded with the Tin Pigs, so there is a significant question of what factual basis King of Freight could have relied upon to admit that Semana Legacy has completed the pickup.

PKM's evidence regarding the pickup is similarly underwhelming. PKM relies upon the fact that the truck that picked up the Tin Pigs had Kamboj written on its driver's door with a black eagle logo next to it. In addition, PKM presented evidence that the owner of Semana Legacy did not recognize the truck when seeing it on surveillance video captured at MRI. PKM concludes from this evidence and the "Kambos" or "Kamboj" name on the bill of lading that some entity other than Semana Legacy had picked up the shipment.

PKM's conclusion is undermined by several unexplained facts. For example, if Semana Legacy was not the entity that picked up the Tin Pigs, then it begs the question of why no truck from Semana Legacy ever showed up at MRI on the day of the pickup. Similarly, if Semana Legacy was not the entity that picked up the Tin Pigs, there remains the outstanding question of how some other entity knew when to drive to MRI's facility and what was being picked up at the

[1] The parties appear to agree that the truck in question actually read "Kamboj." The Court uses Kambos and Kamboj interchangeably as the parties appear to agree that the distinction between the two is immaterial.

facility. Finally, if Semana was not the entity that picked up the Tin Pigs, there is a question of who informed King of Freight that the Tin Pigs had been loaded and were in transit to PKM. Similar open issues remain with the evidence set forth by MRI. For example, if the truck that appeared on its property was a Semana truck, there remains the question of why it had markings of another entity and why Semana's owner did not recognize the truck. It is also unclear whether MRI made any effort to verify the motor carrier number of the truck/carrier picking up the Tin Pigs despite having been provided with that number through a bill of lading from King of Freight.

While both parties believe they have demonstrated that there is no genuine issue of material fact, the facts above demonstrate that the Court would be required to weigh competing evidence[2] to determine which party bears the ultimate liability for this lost and/or stolen shipment of Tin Pigs. As the Court is not permitted to weigh the evidence at this stage of the proceedings, the matter must proceed to trial.

## IV. CONCLUSION

The parties' motions for summary judgment (Docs. 51 and 64) are DENIED. A telephone status conference for counsel only is hereby scheduled for October 15, 2026 at 2:00 p.m. The parties shall utilize call-in number 216-329-5544 and Meeting ID 131 229 437 for the conference.

**IT IS SO ORDERED.**

DATE: September 23, 2026

*/s/ John R. Adams*
Judge John R. Adams
UNITED STATES DISTRICT COURT

[2] The Court would also note that there is a question of whether Naragon's statements of what the alleged driver told her are in fact admissible evidence.